UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN EUGENE TURNER,

     Petitioner,

v.                                                Case No.  4:16cv43/MW/CJK

SECRETARY, DEPTMENT OF
CORRECTIONS,

     Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is a counseled petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer (doc. 29), providing relevant portions of the state court record (doc. 6).  Petitioner did not reply although invited to do so (*see* doc. 30).  The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

## BACKGROUND AND PROCEDURAL HISTORY

In June 2009, the petitioner, Steven Turner, was convicted in a Florida state court of two crimes: (1) lewd or lascivious molestation of a 12-year-old boy, C.B. (for fondling C.B.'s penis), and (2) lewd or lascivious conduct (for later asking C.B. to allow Turner to touch C.B.'s penis).  (Doc. 6, Ex. C (trial transcript), Ex. D (written verdict), Ex. H (sentencing transcript), Ex. K (judgment), Ex. Q (corrected judgment)).[1]  Petitioner was adjudicated guilty and sentenced to fifteen years in prison for the molestation and a consecutive term of 15 years on sex offender probation for the lewd conduct.  (Exs. H, Q).  The Florida First District Court of Appeal (First DCA) affirmed on June 17, 2011, per curiam and without written opinion.  *Turner v. State*, 63 So. 3d 758 (Fla. 1st DCA 2011) (Table) (copy at Ex. V).

On September 2, 2011, petitioner filed a counseled motion for reduction of sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. W).  The state circuit court denied the motion on October 31, 2011.  (Ex. X).

On September 12, 2012, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. Y).  The

---

[1] References to exhibits are to those provided at Doc. 6.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom-most center of the page.

state circuit court denied the motion on June 4, 2014, after an evidentiary hearing. (Ex. BB (evidentiary hearing transcript); Ex. CC (order)).  The First DCA affirmed per curiam without written opinion.  *Turner v. State*, 178 So. 3d 404 (Fla. 1st DCA 2015) (Table) (copy at Ex. HH).  The mandate issued December 22, 2015.  (*Id.*).

Petitioner filed his counseled federal habeas petition on January 25, 2016, raising six claims.  (Doc. 1).  Respondent asserts petitioner is not entitled to habeas relief because he fails to meet 28 U.S.C. § 2254(d)'s demanding standard.  (Doc. 29).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]    Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.    Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).    The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).    The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

DISCUSSION

Ground One          "Defense Counsel's failure to adequately object to improper
comments made by the prosecutor during closing arguments
constitutes ineffective assistance of counsel.    Further, the
prosecutor's comments deprived Petitioner of his constitutional
due process right to a fair trial."  (Doc. 1, p. 17).

Petitioner alleges the prosecutor made several improper comments during

closing argument, which defense counsel allowed to pass without objection.

Petitioner categorizes the comments as: "(1). Improper Comments on the Credibility

of Defense Witnesses"; "(2). Improper Misstatements of the Evidence"; "(3).

Improperly Informing the Jury to Base Verdict on who was Believable"; and "(4).

Improper Comments on Right to Remain Silent".  (Doc. 1, pp. 17-23).  Petitioner

claims counsel's failure to object denied him his rights to effective assistance of

counsel and a fair trial in violation of the Sixth and Fourteenth Amendments.  (*Id*.).

The parties agree that petitioner presented his ineffective assistance claim to the state

courts in his Rule 3.850 proceeding; that the postconviction trial court denied relief

on the merits; and that the First DCA summarily affirmed without explanation.

(Doc. 1, pp. 17-23 and 29 ¶ 13; Doc. 29, pp. 17-42 and nn. 4-7).  The First DCA's

summary affirmance is an "adjudication on the merits" entitled to deference under

28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100 ("This Court now holds and

reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden to overcome that presumption and to show

that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts while evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.  As the Court in

*Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Petitioner raised his ineffective assistance claim as Ground I of his counseled

Rule 3.850 motion.  (Ex. Y, pp. 2-9).  The state circuit court held an evidentiary

hearing and denied relief by written order.  (Ex. BB (evidentiary hearing transcript);

Ex. CC (order)).  The order thoroughly described the evidence presented at trial (Ex.

CC, pp. 2-11), then reasoned:

> **Ground I(a):  Failure to Object to Comments on Witness Credibility**
> The motion asserts that "It is improper to comment on the credibility of witnesses or assert that a defense witness is lying."  The motion asserts as authority for this principle the opinions of <u>Chavers v. State</u>, 964 So.2d 790 (Fla. 4th DCA 2007); <u>Childers v. State</u>, 936 So.2d 619 (Fla. 1st DCA 2006); and <u>Pacifico v. State</u>, 642 So.2d 1178 (Fla. 1st DCA 1994).

The cited opinions are distinguishable.  The impropriety in <u>Chavers</u> was not commenting on the witness's credibility but asserting without record evidence that the defendant encouraged the witness to lie.  The concurring opinion in <u>Childers</u> is similarly unavailing.  <u>Pacifico</u> is a case of pervasive prosecutorial misconduct with multiple sustained objections and admonitions by the trial court regarding improper comments by the prosecutor.

The limitations imposed on closing are more applicably stated in <u>Whigham v. State</u>, 97 So.3d 274 (Fla. 1st DCA 2012):

> "[A]n attorney is allowed to argue . . . credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.'  Miller v. State, 926 So.2d 1243, 1254-55 (Fla. 2006).  "Improper prosecutorial 'vouching' for the credibility of a witness occurs 'where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury' or, stated differently, where the prosecutor 'implicitly refers to information outside the record.'"  <u>Jackson v. State</u>, 89 So.3d 1011, 1018 (Fla. 4th DCA 2012) (quoting <u>United States v. Rivas</u>, 493 F.3d 131-37 (3d Cir. 2007)).  Such vouching did not occur here.  Rather, the prosecutor, in rebuttal, appropriately explained Ms. Flowers' demeanor on the stand after Appellant's counsel in closing argument attacked her credibility based on her demeanor and purported evasiveness on cross-examination.

Similarly, the court in <u>Jackson v. State</u>, 89 So.3d 1011 (Fla. 4th DCA 2012) described proper comment on witness credibility in closing argument:

> Attorneys have wide latitude in arguing to a jury. <u>Breedlove v. State</u>, 413 So.2d 1, 8 (Fla. 1982).  However, "attorneys must 'confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.'" <u>Hosang v. State</u>, 984 So.2d 671, 672 (Fla. 4th DCA 2008) (quoting <u>Knoizen v.</u>

Bruegger, 713 So.2d 1071, 1072 (Fla. 5th DCA 1998)).
When evaluating a prosecutor's comment, the comment
"should be examined in the context in which it is made."
Lubin v. State, 963 So.2d 822, 824 (Fla. 4th DCA 2007).

Here, Jackson contends that the prosecutor impermissibly
injected her personal opinion into the argument by stating
that Dingle, whose credibility was hotly disputed, testified
openly, honestly, and truthfully.    By this argument,
Jackson invokes the rule that "it is improper for an
attorney to express a personal opinion as to the credibility
of a witness."  Johnson v. State, 801 So.2d 141, 142 (Fla.
4th DCA 2001).  But, "an attorney is allowed . . . to argue
credibility of witnesses or any other relevant issue so long
as the argument is based on the evidence."  Miller v. State,
926 So.2d 1243, 1254-55 (Fla. 2006) (emphasis added).
Improper prosecutorial "vouching" for the credibility of a
witness occurs "where a prosecutor suggests that she has
reasons to believe a witness that were not presented to the
jury," or, stated differently, where the prosecutor
"implicitly refers to information outside the record."
United States v. Rivas, 493 F.3d 131, 137 (3d Cir. 2007).

A blanket prohibition on "arguing the credibility" of witnesses is
inconsistent with the detailed instructions provided to every jury for
assessing witness credibility.  Florida Standard Jury Instruction 3.9
"Weighing the Evidence."

A lawyer who argues that the evidence demonstrates or supports a
reasonable inference that a witness's testimony is either credible or
unworthy of belief is not arguing personal opinion.  Such comment
permissibly applies the law given to every jury to the evidence
introduced and reasonable inferences supported by the evidence.

The testimony of C.B. was irreconcilable with the defense theory of the
case.  C.B. testified that sexual conduct occurred.  The defense was that
C.B. was untruthful – defense trial counsel stated during opening
statement that this case was the story of "the boy who cried wolf."  The

defense presented two witnesses who had very close personal relationships with Mr. Turner and the evidence fully supported vigorously asserting bias. At the conclusion of the State's case the court denied the defense motion for judgment of acquittal because, "I find a credibility issue is presented. That if the jury were to find the child truthful beyond a reasonable doubt that there is a prima facie case . . . so it's up to the jury." Credibility was the crucial issue in the case and both counsel for the prosecution and the defense vigorously advocated their client's positions.

I carefully reviewed the trial transcript. I conclude that the prosecutor's comments in context of the totality of the evidence were not objectionable. Thus, Mr. Turner cannot carry his burden of proof in asserting that defense trial counsel rendered ineffective assistance by failing to object since the objection would have been properly denied.

**I(b):  Misstatement of Evidence.**
As to the alleged misstatement of evidence, Mr. Turner failed to prove either ineffective assistance or prejudice.

Ruth Johnson testified both that she checked on C.B. and that she would have heard him use the bathroom if, as he testified, he had because she would have heard either the exhaust fan in the bathroom or his footsteps because the house is small and she was awake all night reading. The prosecutor's comments as to both issues were within the bounds of appropriate advocacy.

**I(c):  Informing Jury to Base Verdict on Who was Credible.**
In context the prosecutor's argument did not shift the burden of proof. Thus as to the prosecutor's comments that the case was a pure credibility contest was not objectionable. See Rivera v. State, 840 So.2d 284 (Fla. 5th DCA 2003). Mr. Turner proved neither ineffective assistance or prejudice as to this portion of the prosecution's closing argument.

**I(d):  Comment on Right to Silence.**
First, the State's argument that Mr. Turner could have, should have or did raise the issue of comments on right to silence on direct appeal is

unavailing.  See, e.g., Haygood v. State, 128 So.3d 178 (Fla. 1st DCA 2013).  A claim of failure to object to prosecutorial comment on the defendant's silence is properly raised in a post-conviction motion alleging ineffective assistance because the failure to object may waive the issue on appeal and there is no indication on this record that any appellate court has ever actually decided the issue.  Martin v. State, 501 So.2d 1313 (Fla. 1st DCA 1986).

In context, the statement asserted to have been a comment on Mr. Turner's right to silence was as follows:

> Evidence.  Evidence is what happened on that stand today.  There was tangible evidence.  It was all testimonial evidence, from Charleston Baxter, from Shirley Patterson and from Ruth Johnson.  That's your evidence.  You have to weigh that evidence.  Not what might have been presented, not what could have been presented, not what should have been presented, but what was presented.  That's your evidence.  That's what you have to work with.

> And based on that evidence, you have to make a lawful verdict.  The things you should consider is did the witness seem to have opportunity to see and know the things about which the witness testified?  Let's talk about Charleston Baxter for a minute.

> **I submit to you he [C.B.]** *is one of two people who* **knows exactly what happened.**  He came in here today and he told you what he saw.  He told you what he heard.  He told you what he experienced.  Did the witness seem to have an accurate memory?  You know the funny thing about memory is, memory is not like a video recorder, it doesn't record every detail of every day.  You remember certain things.

> When he didn't remember, he told you he didn't remember.  When the defense got up here and pulled out this 25 page depo and showed him where he said

something different, well it [sic] that's what is says, that's what I said.  I'm not coming in here to lie to you.

Emphasis added.

The prosecutor's closing and rebuttal arguments, consuming 30 pages of the transcript, never again implicated Mr. Turner's silence.

"[A]ny comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged."  Rodriguez v. State, 753 So.2d 29, 37 (Fla. 2000).  But an impermissible prosecutorial allusion to the defendant's silence does not in all instances require reversal, mistrial or a new trial.  An improper comment on the defendant's silence may be remedied by sustaining an objection and a curative instruction.  Jennings v. State, 124 So.3d 257 (Fla. 3d DCA 2013).  If a trial court fails to recognize the error and incorrectly overrules an objection, harmless error analysis applies.  State v. Marshall, 476 So.2d 150 (Fla. 1985).

In Poole v. State, 997 So.2d 382, 390-91 (Fla. 2008) the Supreme Court considered the denial of a mistrial where the prosecutor stated to the jury, "if Mr. Poole wants to tell the state and Detective Grice that somebody helped him commit this crime, then let him come forward. . ."  The Supreme Court concluded that in denying a motion for mistrial, "the trial court did not abuse its discretion in denying the motion for mistrial because in light of the evidence linking Poole to the crimes, the error was not so prejudicial as to vitiate the entire trial."  Because every allusion is not per se reversible, defense trial counsel operates within the bounds of effective advocacy by making a decision to assess the likely impact of an arguable or relatively minor allusion to the defendant's silence if, in counsel's reasonable judgment, the allusion is unlikely to significantly impact the outcome.

The point of the six improper words – "is one of two people who" – in the context of the entire closing argument is that the two witnesses actually called by the defense, Ms. Johnson and Ms. Patterson, were not present and admitted that they had no way of knowing what happened

at the time C.B. asserted Mr. Turner committed these crimes, not that Mr. Turner should be convicted because he did not testify.

During the evidentiary hearing, defense trial counsel testified that when she heard the phrase C.B. "is one of two people who knows exactly what happened" she prepared to object but did not because the prosecutor's argument then solely discussed the credibility of the witnesses who testified without any reference to Mr. Turner as the other "of two people who knows exactly what happened." Defense trial counsel let the comment pass without an objection because she concluded in the real time, moment-by-moment process of the trial that the tenor of the comment was insufficiently direct to implicate Mr. Turner's silence.

An objection to the sentence should have been sustained under the "fairly susceptible" test for impermissible comment on the right to silence. But in the context of the entire nearly 30 page argument, defense trial counsel's decision to let the comment pass was reasonable because the prosecutor never alluded directly to the defendant's right to silence. The argument was instead properly directed to the bias of the two witnesses called by the defense whose testimony suggested that they extrapolated from their lack of knowledge to the conclusion that the child was untruthful. That the objection would have resulted in the grant of a mistrial or otherwise would have prevented the case from reaching a verdict was highly unlikely. The contrast drawn by the prosecutor was that C.B. knew what happened and the defense witnesses did not – not that C.B. testified and Mr. Turner did not. Cf. Boutwell v. State, 530 So.2d 1092 (Fla. 1st DCA 1988). Thus, I conclude that defense trial counsel's decision not to object amounted to a permissible tactical or strategic decision by defense trial counsel and did not amount to ineffective assistance of counsel.

Additionally, I conclude that Mr. Turner cannot carry his burden of demonstrating that the failure to object prejudiced him. The statement asserted was so limited that there is no reasonable likelihood that the result would have been different had defense trial counsel objected or moved for a mistrial.

(Ex. CC, pp. 11-16).  The First DCA summarily affirmed without explanation.  (Ex. HH).

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

Petitioner's challenge to the state circuit court's reasoning is confined to its application of *Strickland*'s two-pronged test – petitioner does not claim the state court applied the wrong legal standard or based its decision on an unreasonable determination of the facts.  (Doc. 1, pp. 17-23).  In particular, petitioner disagrees with the state court's conclusion that counsel's failure to object was reasonable, and he claims the state court unreasonably applied *Strickland*'s prejudice prong because it considered only whether counsel's failure to object affected the outcome of his trial instead of also considering whether his direct appeal "may have been different had counsel properly objected".  (*Id.*, p. 23).

The undersigned has reviewed the evidence presented at trial, the entirety of the parties' opening and closing arguments, the trial court's instructions to the jury, and trial counsel's postconviction evidentiary hearing testimony explaining her reasons for not objecting.  Fairminded jurists can concur in the state court's determination that petitioner failed to show counsel's decision not to object was a course no competent counsel would have taken.  To the extent petitioner argues the comments were prohibited by Florida case law (as he did in his Rule 3.850 motion and appeal), this court must accept the state court's determination that they were not prohibited and, accordingly, counsel was not ineffective.  *See Herring v. Secretary*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's] counsel] was not ineffective for failing to make that objection.").

To the extent petitioner argues the comments were improper under a federal standard, the state court reasonably concluded that an objectively reasonable trial lawyer could have deemed the comments permissible when viewed in the context of the entire trial.   A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (holding that the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence).   When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983).   Further, "[a] comment on the failure of the defense, as opposed to that of the defendant, to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's fifth amendment privilege."   *Duncan v. Stynchcombe*, 704 F.2d 1213, 1215-16 (11th Cir. 1983).   The state court's application of *Strickland*'s performance prong was not unreasonable.  *See, e.g., Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (affirming the denial of habeas relief on claim that counsel was ineffective for failing to object to several prosecutorial comments which petitioner believed misstated the law, misrepresented the facts, commented on the

petitioner's right to remain silent and improperly commented on witness credibility; viewing the comments in the context of the evidence presented at trial and the entirety of closing arguments, the prosecutor appropriately commented on witness credibility, correctly commented on evidence presented at trial, did not comment on the petitioner's right to remain silent, and did not misstate the burden of proof).

Fairminded jurists can also concur in the state court's determination that petitioner failed to show a substantial likelihood the result of his criminal proceeding would have been different had counsel objected to the comments.  (Ex. C, pp. 194-95, 207-08 (brief discussion between defense counsel and the trial court noting counsel was poised to object, and trial court's confirmation that the objection would have been overruled)); *see also Richter*, 562 U.S. at 792 (holding that *Strickland*'s prejudice prong requires that a petitioner show "[t]he likelihood of a different result [is] substantial"); *Reaves v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 886 (11th Cir. 2013) (using "substantial likelihood" interchangeably with "reasonable probability" in describing *Strickland*'s prejudice standard).  Because it is not clear that the state court erred at all, much less erred so transparently that no fairminded jurist could agree with its decision, petitioner is not entitled to federal habeas relief.

Ground Two          "Defense Counsel's affirmative misadvise [sic] on the
                    admissibility of prior unsubstantiated reports, constitutes
                    ineffective assistance of counsel".  (Doc. 1, p. 23).

Petitioner alleges he told defense counsel he wanted to testify because he was the only one who could "connect the dots" and show C.B. was lying, but trial counsel convinced him not to testify by erroneously advising him the State would be able to question him about prior 40-year-old, unsubstantiated allegations of child sexual abuse.  (Doc. 1, pp. 23-25).  The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the postconviction trial court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 1, pp. 23-25 and 29 ¶ 13; Doc. 29, pp. 45-46).  The First DCA's summary affirmance is an "adjudication on the merits" under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100.

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

B.     Section 2254 Review of State Court's Decision

Petitioner raised this claim as Ground II of his counseled Rule 3.850 motion. (Ex. Y, pp. 10-11).  The state circuit court held an evidentiary hearing and denied

relief by written order.  (Ex. BB (evidentiary hearing transcript); Ex. CC (order)).

The circuit court reasoned:

> **Ground II:    Prior Unsubstantiated Reports of Child Molestation**
> The motion asserts:
>
> > Defendant Turner wanted to testify and believed that since the case was his word against the alleged victim's, his testimony was the only way that the jury would hear his denial of the allegations. . . . Defense Counsel not only strongly advised the defendant not to testify, but told the Defendant that if he testified that the prior history of allegations would be allowed into evidence and would prejudice the jury.  Although there is no doubt that such reports would have prejudiced the Defendant, Defense Counsel was incorrect in the interpretation of the law.  The prior unsubstantiated reports were inadmissible.
>
> Mr. Turner failed to prove misadvice during the evidentiary hearing. His testimony, as well as the trial transcript demonstrate that defense trial counsel was well aware of the prior allegations and the importance of preventing their admission in evidence.  Indeed, defense trial counsel secured an agreement that the prosecution would not offer evidence of prior unsubstantiated allegations.
>
> Defense trial counsel testified that she was concerned that if Mr. Turner testified he would blurt out his opinion that because he passed a polygraph as to the prior allegations[,] that showed he was again being falsely accused.  Defense trial counsel's advice to Mr. Turner that his unresponsive answers to questions volunteering such information would be detrimental to the defense was, of course, sound.  Mr. Turner's assertion that defense trial counsel threatened him or coerced him in any way to prevent him from testifying is not credible.
>
> As to Ground II, Mr. Turner failed to prove either ineffective assistance or prejudice.

(Ex. CC, p. 17). The First DCA summarily affirmed without explanation. (Ex. HH).

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of petitioner's claim was consistent with *Strickland* and was based on a reasonable determination of the facts. Petitioner essentially takes issue with the state court's credibility determinations – its acceptance of trial counsel's postconviction evidentiary hearing testimony as credible and determination that petitioner's testimony was not credible. This court, however, must defer to the state court's credibility determinations. *See Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1315-16 (11th Cir. 2016), *cert. denied sub nom. Jones v. Jones*, 137 S. Ct. 2245 (2017); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). The Eleventh Circuit explained in *Consalvo*:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Id*. at 845.   Petitioner points to nothing in the record that meets this demanding

standard.   Trial counsel Nina Moody testified at the Rule 3.850 evidentiary hearing:

> Q  [Assistant State Attorney Summers]:  Okay.  And Ms. Moody, in this case did Mr. Turner – did you speak to him about allegations out of Georgia?
>
> A  [Attorney Moody]:  Yes.
>
> Q:  Okay.  And what did he – what defense did he want to present as to those allegations?
>
> A:  Well, he's the one that initially brought them to my attention.  I believe at some point they were brought to the prosecutor's attention through other people, and the prosecutor had told me about them as well.  But basically that because they were – he had had similar charges in Georgia and they were dismissed, he thought that was very important.
>
> Q:  Okay.  Did he want to present that to the jury?
>
> A:  I believe so.
>
> Q:  Did he want to present it to the jury because he was saying they lied, then, so they must be lying now?
>
> A:  Yes.
>
> Q:  Okay.
>
> A:   And part of the Georgia thing was that he had been given a polygraph and had passed it.
>
> Q:  And he thought that was important in his defense in this case?
>
> A:  I think so.  There was a lot of it that he thought was there.

Q:  I'm talking about the Georgia allegations –

A:  Yes.

Q:  – and what he wanted to do with that information.  Did he say that he actually wanted to tell the jury about these things?

A:  I don't remember specifically – that was the connotation I got from our conversation that we explained to him – I believe Terry McMullen tried this case with me – why it would not be good for the jury to hear this, and how we wanted to keep it out.  And I believe he understood that.

Q:  Okay.  So your advice to him was, you know, we can't talk about it because it will open the door to be allowed the [sic] ask questions about it?

A:  Correct.

Q:  Did you ever tell him that he if he took the stand the State could ask him about those allegations just because he took the stand?

A:  No.

Q:  Okay.  Did you make that clear to him?

A:  I believe so.  Our worry with Mr. Turner was that he was very verbal and he was very involved in his defense, but he talked a lot and that somehow this would come out, and we told him this couldn't come out because if anything was mentioned of it, then the State could try to go into more detail about what the allegations were.

Q:  Okay.  But as far as him just being able to be asked about it because he took the stand, he was never told him [sic] that would be the case?

A:  I never told him that.

Q:  Did you ever tell him that he could not testify?

A:  No.

Q:  What did you tell him about testifying?

A:  That it was strictly his decision, that we would give him our advice.

Q:  Uh-huh.

A:  And tell him the pros and cons, but it would ultimately be his decision whether or not to testify.

Q:  And what did he decide to do?

A:  He ultimately decided not to testify.

Q:  And that was his decision?

A:  That was his decision.

(Ex. BB, pp. 61-62).  Trial counsel Moody confirmed during cross-examination by

petitioner's postconviction counsel:

Q [Petitioner's postconviction counsel]:  . . . Now, with regard to his testimony, did you advise him not to testify?

A:  Our advice was for him not to testify.

Q:  Okay.  And did you tell him that if he testified and this information came out that he would lose the trial?

A:  We told him it would be bad for him if he spoke of it and the state could go into it.  We didn't think it would be favorable for him.

Q:  Did you counsel him that he could take the stand and not provide that information, and the jury would not be made aware that there were those prior allegations?

Q:  Yeah.  We never told him that he would be questioned on that.  What we said was if he said something, opened the door to it, that obviously we weren't going to ask him a question to open the door but if somehow that came out, the State could question him more on it.

(Ex. BB, pp. 72-73).

Petitioner has not established – and certainly has not established beyond "reasonable argument", *Richter*, 562 U.S. at 105, that his lawyer's advice did not satisfy *Strickland*'s deferential standard.  Although petitioner is correct that Florida law typically prevents the State from asking questions about prior bad acts, *see Wright v. State*, 19 So.3d 277, 291-92 (Fla. 2009) ("[C]ollateral-crime evidence, such as bad acts not included in the charged offenses, is admissible when relevant to prove a material fact in issue, but is inadmissible when the evidence is relevant solely to prove bad character or propensity."), the State nonetheless could have elicited specifics of the prior allegations for purposes of impeachment if petitioner opened the door.  *See Nock v. State*, No. SC17-472, 2018 WL 5660592, at *7-8 (Fla. Nov. 1, 2018) (explaining the concept of door-opening).  Petitioner's ineffective assistance claim is further undermined by the trial court's colloquy with him concerning his decision not to testify.  (Ex. C, pp. 80-84).

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Nor was the

decision based on an unreasonable determination of the facts.   Petitioner is not

entitled to federal habeas relief on Ground Two.

Ground Three          "Defense Counsel's failure to present evidence of C.B.'s
                      behavior and present the desired defense constituted ineffective
                      assistance of counsel."  (Doc. 1, p. 23).

Petitioner claims trial counsel was ineffective for failing to present evidence

that the victim exhibited sexually inappropriate behavior before the offenses by

exposing himself and making sexually explicit comments.   Petitioner alleges that

defense witnesses (Ms. Johnson and Ms. Patterson) informed defense counsel of the

victim's behavior, but counsel failed to elicit that testimony.  (Doc. 1, pp. 23-25).

The parties agree that petitioner presented this claim to the state courts in his Rule

3.850 proceeding; that the postconviction trial court denied relief on the merits; and

that the First DCA summarily affirmed without explanation.  (Doc. 1, pp. 23-25 and

29 ¶ 13; Doc. 29, pp. 50-51).   The First DCA's summary affirmance is an

"adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See*

*Richter*, 562 U.S. at 100.

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of trial counsel is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner raised this claim as Ground III of his counseled Rule 3.850 motion.

(Ex. Y, pp. 12-14).   The state circuit court held an evidentiary hearing and denied

relief as follows:

> **Ground III:  Failure to Offer Evidence of C.B.'s Sexualized Behavior**
> At the beginning of the trial defense trial counsel and the prosecutor discussed their agreement that the [sic] neither party would offer evidence of the prior allegations of sexual abuse of other children by Mr. Turner and that neither party would offer evidence of C.B.'s sexualized conduct other than the specific acts alleged in the information.  Mr. Turner asserts that C.B.'s sexualized conduct should have been introduced by the defense to show that C.B. was making up allegations against Mr. Turner to deflect from C.B.'s own sexual misconduct.
>
> In summary, Mr. Turner, Ruth Johnson and Shirley Patterson testified during the evidentiary hearing that C.B. frequently and persistently engaged in various forms of disturbing sexualized behavior during an unspecified period of time leading up to C.B.'s allegations of sexual misconduct by Mr. Turner.   Mr. Turner testified that the child committed various sexual acts and made sexual statements during the pool incident and C.B. knew from Mr. Turner's outrage that he was going to get in trouble for this conduct thus providing a motive to lie about Mr. Turner to deflect from C.B.'s misconduct.
>
> Defense trial counsel testified that she made a conscious, strategic decision not to introduce evidence of the child's sexualized conduct because of her fear that such evidence would suggest an inference that the conduct was related to Mr. Turner's sexual abuse of C.B.  This decision was reasonable.
>
> Finally, the assertion that evidence of the child's sexualized behavior would be helpful to the defense is speculative and unpersuasive.  Mr.

Turner was accused of molesting a 12 year old boy while they were in bed together overnight and while the two were changing out of their bathing suits. Mr. Turner was not biologically related to C.B. and was 58 years old on the offense date alleged in the information. That the jury would have been persuaded to reach a different verdict by adding evidence that Mr. Turner also knew at the time he got in bed with the child that the child routinely and disturbingly acted out sexually is extraordinarily unlikely.

As to Ground III, Mr. Turner failed to prove either ineffective assistance or prejudice.

(Ex. CC, pp. 17-18). The First DCA summarily affirmed without explanation. (Ex. HH).

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of petitioner's claim was consistent with *Strickland* and was based on a reasonable determination of the facts. The circuit court's factual findings – including its finding that counsel's decision not to present evidence of C.B.'s sexualized behavior was a tactical one made after investigating the facts and weighing the likely risks and benefits – are amply supported by the record and are presumed correct. Based on the state court's findings, this court cannot say that no "fairminded jurist could agree" that counsel's advice and defense strategy fell within the wide range of reasonable professional assistance, and that petitioner failed to establish a substantial likelihood of a different trial outcome had counsel elicited testimony about C.B.'s sexualized behavior. Petitioner is not entitled to habeas relief on Ground Three.

Ground Four          "Defense Counsel allowed the Court to be provided with an
erroneous and damaging evaluation."  (Doc. 1, p. 26).

This claim involves a psychological evaluation prepared by Dr. Pritchard after

trial, for consideration at sentencing.  Petitioner alleges that the report contained

several errors, which caused Pritchard to assess petitioner as a "medium to high risk"

for recidivism instead of a "low risk".  (Doc. 1, p. 26).  Petitioner faults trial counsel

Attorney Moody for filing the report with the court prior to consulting petitioner and

determining its accuracy.  Petitioner contends that as result of counsel's error, "the

Court was prejudiced by the information contained within the report."  (*Id*.). The

parties agree that petitioner presented this claim to the state courts in his Rule 3.850

proceeding; that the postconviction trial court denied relief on the merits; and that

the First DCA summarily affirmed without explanation.  (Doc. 1, p. 29 ¶ 13; Doc.

29, pp. 55-56).  The First DCA's summary affirmance is an "adjudication on the

merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at

100.

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of trial counsel is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner raised this ineffective assistance claim as Ground V of his counseled Rule 3.850 motion.  (Ex. Y, p. 18).  The state circuit court held an evidentiary hearing and denied relief for these reasons:

> **Ground V:  Failure to Object to Psychologist's Report**
> The motion asserts that defense sentencing counsel (Mr. Turner hired a different lawyer to represent him at sentencing) submitted a psychological report to the court prematurely, without consulting Mr. Turner and without ensuring that errors in the report were corrected.
>
> Very little attention was devoted to this allegation during the evidentiary hearing.  However, the same allegation was raised in Mr. Turner's motion filed September 2, 2011 and entitled, "Motion for Reduction of Sentence."  The court denied the motion by written order of October 28, 2011.
>
> The transcript of a hearing conducted June 17, 2009 demonstrates that defense sentencing counsel was hired with virtually no time to prepare for the sentencing hearing, although the court granted a very brief continuance.  The transcript of the sentencing hearing of June 23, 2009, shows that defense sentencing counsel immediately raised with the court that it should not rely on the psychological report and the court in fact did not rely on the psychological report.
>
> Mr. Turner failed to prove ineffective assistance or prejudice as to Ground V.

(Ex. CC, p. 19).  The First DCA summarily affirmed without explanation.  (Ex. HH).

The record establishes that trial counsel Nina Moody filed the psychological report with the court.  (Ex. E, p. 7).  The record also establishes that Moody withdrew the report and physically removed it from the court file on June 17, 2009, prior to

sentencing, and that sentencing counsel Dennis Boothe had an opportunity to meet with the probation department to ensure any corresponding errors on petitioner's Pre-Sentence Investigation were likewise corrected. (*Id*., p. 8). At sentencing on June 23, 2009, the trial judge acknowledged having read the psychological report prior to it being withdrawn from the file, but confirmed she had only a vague recollection of it and, in any event, was relying solely on the evidence at trial and statements at the sentencing hearing to determine an appropriate sentence, not any information from the psychological report. (Ex. H (transcript of sentencing); Ex. X (order denying motion for reduction of sentence)).

Given the evidence that the report played no role in sentencing, fairminded jurists can concur in the state court's determination that petitioner failed to establish prejudice under *Strickland*. Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "The trial court erred by denying Petitioner's motion to continue the sentencing hearing." (Doc. 1, p. 27).

Petitioner claims the sentencing court "erred" when it denied the defense's second request to continue the sentencing hearing for 30 days to allow petitioner to submit an amended, corrected psychological report from Dr. Pritchard. (Doc. 1, pp. 28-29). Petitioner asserts that had the court granted a continuance, Dr. Pritchard "would have clarified – based on corrected facts – that Petitioner is a low risk for

reoffending." (*Id.*, p. 29).    Petitioner relies on *Chambers v. Mississippi*, 410 U.S. 284 (1973), to support his claim.  (Doc. 1, p. 28).

The parties agree that petitioner raised this claim on direct appeal, and that the First DCA denied the claim on the merits in an unexplained decision.  (Doc. 1, p. 29 ¶ 13; Doc. 29, p. 60 and n.14).   The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100.

Petitioner has not shown that the First DCA's rejection of his due process claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  No decision of the Supreme Court suggests that denying a second motion to continue sentencing to enable a defendant to secure a psychological evaluation assessing his risk for recidivism amounts to a due process violation, especially where, as here, the sentencing judge indicates she would not find that information helpful.  *See Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be 'contrary to clearly established Federal law as determined by the U.S. Supreme Court.'") (*quoting Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003)); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in

Van Patten's favor, it cannot be said that the state court unreasonably applied clearly

established federal law." (internal quotation marks omitted)); *Schriro v. Landrigan*,

550 U.S. 465, 478 (2007) (The Arizona Supreme Court did not unreasonably apply

federal law because "we have never addressed a situation like this.").  Petitioner has

not met § 2254(d)'s demanding standard and is not entitled to federal habeas relief.

Ground Six            "Cumulative error"  (Doc. 1, p. 29).

Petitioner last claims that "[a]ll of the errors committed by counsel considered

either individually or together, resulted in Petitioner being denied a fair trial."  (Doc.

1, p. 29).  Petitioner presented this claim for the first time in his Rule 3.850 appeal,

and the First DCA denied relief without explanation.  (Ex. EE, p. 38; Ex. HH).  The

First DCA's summary affirmance is an "adjudication on the merits" entitled to

deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100.

The First DCA's rejection of petitioner's cumulative error claim was neither

contrary to, nor an unreasonable application of, clearly established Federal law.  The

Supreme Court has not recognized the cumulative error doctrine in the context of

ineffective assistance of counsel claims.[3]   In any event, cumulative error analysis

---

[3]The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 563-65 (11th Cir. 2009).  The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 565 (*quoting United States v. Cronic*, 466 U.S. 648, 659 n. 26 (1984)).

evaluates only matters determined to be in error, not the cumulative effect of non-errors. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004 (holding that where there is no error or only a single error, there can be no cumulative error); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.").

As previously discussed, none of the alleged errors of trial counsel, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving petitioner of effective assistance of counsel or a fair trial. *See, e.g., Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (holding that because there was no error, petitioner could not show the state court lacked a reasonable basis to deny his cumulative-error claim); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th

Cir. 2012) (concluding that there can be no cumulative trial error where there was no individual trial court error); *Ballard v. McNeil*, 785 F. Supp. 2d 1299, 1335-37 (N.D. Fla. 2011) (rejecting cumulative-error ineffective assistance of counsel claim on same basis).  Petitioner is not entitled to federal habeas relief on Ground Six.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S.

at 327).  The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Steven Turner*, Gadsden County Circuit Court Case No. 2008-CF-404, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 19th day of November, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.